1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

12

JULIE L. TURNER,                                    Case No. 5:17-cv-00480-SHK

                              Plaintiff,

13

                    v.

14

                                                    OPINION AND ORDER

NANCY A. BERRYHILL, Acting

15

Commissioner of Social Security,

16

                              Defendant.

17

18

19        Plaintiff Julie L. Turner ("Plaintiff") seeks judicial review of the final

20    decision of the Commissioner of the Social Security Administration

21    ("Commissioner" or the "Agency") denying her application for supplemental

22    security income ("SSI"), under Title XVI of the Social Security Act (the "Act").

23    This Court has jurisdiction, under 42 U.S.C. § 1383(c), and, pursuant to 28 U.S.C.

24    § 636(c), the parties have consented to the jurisdiction of the undersigned United

25    States Magistrate Judge.  Because the Commissioner's decision denying Plaintiff's

26    application is based on the proper application of the correct legal standards and is

27    supported by substantial evidence, the Commissioner's decision is AFFIRMED.

28    / / /

# I.    BACKGROUND

Plaintiff filed an application for SSI on April 18, 2013 and alleged disability beginning on October 18, 2011.  Transcript ("Tr.") 244-52.[1]  Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on September 17, 2015, an ALJ determined Plaintiff was not disabled.  Tr. 17-37.  Plaintiff sought review by the Appeals Council, however, review was denied on January 11, 2017.  Tr. 1-7.  This appeal followed.

# II.    STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'"  Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (internal citation omitted)).  A reviewing court, however, "cannot affirm the decision of an agency on a ground

[1] A certified copy of the Administrative Record was filed on August 9, 2017.  Electronic Case Filing Number ("ECF No.") 16.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

### A.    Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citation omitted).  "If a claimant meets both requirements, he or she is 'disabled.'"  Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive and "if a claimant is found to be disabled or not-disabled at any step in the sequence, there is no need to consider subsequent steps."  Tackett, 180 F.3d at 1098 (citation and internal quotation marks omitted).  The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five.  Id.

3

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity [("SGA")]?  If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI].  If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.  See [20 C.F.R. § 416.920(b)].

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to [SSI].  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.  See [20 C.F.R. § 416.920(c)].

Step 3.  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, the claimant is "disabled" and therefore entitled to [SSI].  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  See [20 C.F.R. § 416.920(d)].

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to [SSI].  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  See [20 C.F.R. § 416.920(e)].

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to [SSI].  See [20 C.F.R. § 416.920(g)(1)].  If the claimant is able to do other work, then

4

the Commissioner must establish that there are a significant number of
jobs in the national economy that claimant can do.  There are two ways
for the Commissioner to meet the burden of showing that there is other
work in "significant numbers" in the national economy that claimant
can do: (1) by the testimony of a vocational expert [("VE")], or (2) by
reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404,
subpt. P, app. 2 [("the Listings")].  If the Commissioner meets this
burden, the claimant is "not disabled" and therefore not entitled to
[SSI].  See [20 C.F.R. §§ 416.920(f), 416.962].  If the Commissioner
cannot meet this burden, then the claimant is "disabled" and therefore
entitled to [SSI].  See id.

Id. at 1098-99.

## B.    Summary Of ALJ's Findings

Before making any findings with regard to the five-step sequential evaluation
process, based on a prior disability application Plaintiff filed on April 20, 2011, the
ALJ observed that Plaintiff was previously found to be not disabled on October 27,
2011.  Tr. 20.  The ALJ found that "[w]ith regard to the previously adjudicated
period, the principle of res judicata applies with respect to the current application,
and all denials of prior applications are final and are not reopened" in the instant
matter.  Id.  The ALJ found, however, that "the presumption of continuing
disability has been rebutted and the prior ALJ['s] decision has no res judicata effect
with respect to the non-adjudicated period because there has been a showing of
changed circumstances . . . and there is new and material evidence relating to the
issue of disability."  Id.  Accordingly, the ALJ found that "although [he] finds
[Plaintiff] is not disabled during the period relevant to th[e] decision, [he] does not
adopt the specific findings of the prior ALJ under the sequential evaluation process
for determining disability."  Id.

5

After determining that he would not adopt the previous ALJ's findings with regard to the sequential evaluation process, at step one, the ALJ found that "[Plaintiff] has not engaged in substantial gainful activity [("SGA")] since March 27, 2013, the application date (20 C.F.R. 416.971 et seq.)." Tr. 22.

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: fibromyalgia; left shoulder tendonitis, status post arthroscopic surgery with recurrent tear; left carpal tunnel syndrome, status post surgery; diverticulitis; and depressive disorder (20 C.F.R. 416.920(c))." Tr. 23.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Id.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 416.967(b)" except that Plaintiff can only "occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; never climb ladders, ropes, or scaffolds; no overhead use of the left upper extremity; frequently perform fine fingering with the left hand; avoid forceful gripping and grasping with the left hand; and [perform] simple, routine, and repetitive tasks." Tr. 24-25.

At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work (20 CFR 416.965)." Tr. 30.

In preparation for step five, the ALJ observed that "[Plaintiff] was born on April 12, 1961 and was 51 years old, which is defined as an individual approaching advanced age, on the date the application was filed (20 CFR 416.963)." Id. The ALJ also observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964)." Id.

At step five, the ALJ found that "[t]ransferability of job skills is not material to the determination of disability because using the [Listings] as a framework supports a finding that [Plaintiff] is not disabled, whether or not [Plaintiff] has

6

transferrable job skills (See SSR 82-41 and [the Listings]).” Id. (internal quotation marks omitted).  The ALJ also found that “[c]onsidering [Plaintiff’s] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969(a)).”  Id.  Specifically, the ALJ found that based on the VE’s testimony, which the ALJ found was consistent with the information contained in the Dictionary of Occupational Titles (“DOT”), Plaintiff could “perform the requirements of representative occupations such as Cashier II (DOT 211.462-010) . . . with 1,200,000 such positions in the national economy; and, . . . Office Helper (DOT 239.567-010) . . . with 119,000 such positions in the national economy.”  Tr. 31.  The ALJ then determined that “[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy” and “[a] finding of not disabled is therefore appropriate.”  Id.

The ALJ, therefore, concluded that “[Plaintiff] has not been under a disability, as defined in the [Act], since March 27, 2013, the date the application was filed (20 CFR 416.920(g)).”  Id.

### C.    Summary of Plaintiff’s Argument

In this appeal, Plaintiff raises only one issue—whether the ALJ erred by rejecting the opinion of her treating rheumatologist, Nina Trinh, M.D.  ECF No. 19, Joint Stipulation at 4.  Plaintiff raises two contentions in support of her argument that the ALJ erred in his analysis of Dr. Trinh’s opinion.

First, Plaintiff argues that the ALJ’s first of two reasons for rejecting Dr. Trinh’s opinion—that it was “inconsistent with the record as a whole, citing generally unremarkable physical examination and normal to mild MRI/x-ray/CT findings . . . is not a good reason for rejecting Dr. Trinh’s opinion.”  Id. at 6 (internal quotation marks omitted).  Plaintiff reasons that “Dr. Trinh cited to [her] fibromyalgia, osteoarthritis of hands, and left knee bursitis as support for her limitations” and “[t]he ALJ acknowledges that [Plaintiff’s] fibromyalgia is a severe

impairment." Id. at 5-6 (citation omitted). Plaintiff asserts that "[b]ecause fibromyalgia is characterized by the exclusion of other possible disorders, the results of the imaging referred to by the ALJ should come as no surprise" and, thus, "[t]he ALJ improperly rejected Dr. Trinh's opinion based on the imaging" that revealed only normal to mild findings. Id. at 6. Plaintiff further reasons that "[t]he ALJ's reference to generally unremarkable physical examination findings lacks merit as well[,]" and Plaintiff cites several examples of treatment records that she argues "as a whole[,] show[] ongoing problems relating to her symptoms." Id. at 7 (internal quotation marks omitted).

Second, Plaintiff argues that the ALJ erred by "reject[ing] Dr. Trinh's opinion for being 'conclusory,' with little explanation." Id. (quoting Tr. 29). Plaintiff argues that "the voluminous record contains evidence from Dr. Trinh showing ongoing support for her opinion." Id. at 8.

**D.  ALJ's Reasons For Rejecting Dr. Trinh's Opinion**

After providing a thorough discussion of Plaintiff's medical evidence, the ALJ accorded "little weight" to Dr. Trinh's opinion, dated May 23, 2014. Tr. 29 (citing Tr. 707-12). The ALJ noted that Dr. Trinh "opined that [Plaintiff] can lift and carry less than 10 pounds; stand and walk for less than 2 hours during an 8-hour day; sit for less than 2 hours during an 8-hour day; and never twist, stoop (bend), crouch, climb stairs, or climb ladders." Tr. 29 (citing Tr. 707-12). The ALJ then noted that Dr. Trinh also opined that Plaintiff "has no useful ability to function to complete a normal workday and workweek without interruptions from psychologically based symptoms" and that Plaintiff's "impairments or treatment would cause her to be absent from work more than three days a month." Id. (citing Tr. 707-12).

The ALJ determined that this opinion was due little weight, "because it is not consistent with the record as a whole, e.g., generally unremarkable physical examinations and normal to mild MRI/x-ray/CT findings" and because "the

opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." Id.

Included in records discussed by the ALJ, that he concluded were inconsistent with Dr. Trinh's opinion, were Plaintiff's medical records during the relevant time period and, notably, the contradicting opinions of psychiatric consultative medical examiner Carlos A. Muralles, M.D., and state agency medical consultants Lisa Mani, M.D., Jacinto DeBorja, M.D., Michael Hammonds, Ph.D., and Chang-Wuk Kang, M.D. Tr. 225-29. The Court first examines the ALJ's consideration of the aforementioned doctors' contradicting opinions.

### 1. Contradicting Medical Opinions Observed By the ALJ

With regard to Plaintiff's physical limitations, the ALJ observed that Dr. Mani opined that Plaintiff could "occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently climb, balance, and crawl; and [should] avoid concentrated exposure to extreme cold, extreme heat, wetness, and hazards." Tr. 29 (citing Tr. 81-82).

The ALJ next observed that Dr. DeBorja opined that Plaintiff could "occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently climb, balance, and kneel; occasionally stoop, crouch, and crawl; frequently handle and finger bilaterally[,]" and that Plaintiff should "avoid concentrated exposure to extreme cold, extreme heat, wetness, and vibration; and avoid even moderate exposure to hazards." Id. (citing Tr. 99-101).

With regard to Plaintiff's mental limitations, the ALJ observed that Dr. Muralles opined that Plaintiff was "mildly limited" in her ability to perform simple, repetitive, and complex tasks; maintain regular attendance; "perform[] work activities on a consistent basis" and "without additional or special supervision"; "complet[e] a normal workday or workweek without interruption

9

resulting from any psychiatric conditions"; "accept[] instructions from supervisors"; "interact[] with coworkers and the public"; and "deal[] with the usual stresses encountered in competitive work." Tr. 28-29 (citing Tr. 533).

The ALJ also observed Drs. Hammonds and Kang's opinions that Plaintiff would "be able to maintain attention and concentration for two hours at a time as required to perform simple tasks, sufficiently to complete an 8 hour day and a 40 hour week" and that Plaintiff could "adapt to routine changes and respond to directions from others[,]" but that she "may have difficulty adapting to new situations at work but can adapt to predictable work environments involving simple repetitive tasks." Tr. 29 (citing Tr. 84-85, 103).

The ALJ also discussed examination findings, Plaintiff's subjective symptom testimony, and the lay testimony of Plaintiff's brother that both support and detract from Plaintiff's claims. Tr. 25-29. After reviewing the testimony of Plaintiff, Plaintiff's brother, and the medical examination findings observed by the ALJ that support Plaintiff's claim, and detract from the ALJ's ultimate conclusion that Plaintiff is not disabled.

### 2. ALJ's Observation of Plaintiff's Subjective Symptom Testimony And The Lay Testimony Of Plaintiff's Brother

Before discussing Plaintiff's medical evidence, the ALJ observed Plaintiff's subjective symptom statements and the lay statements of Plaintiff's brother relating to Plaintiff's limitations.[2] The ALJ observed that Plaintiff "alleged that she is unable to work because of fibromyalgia, post orthopedic arthroscopy left shoulder, diverticulitis, depression, chronic anxiety, and chronic pain." Tr. 25 (citation omitted). The ALJ also observed that Plaintiff "reported that she has pain

---

[2] The ALJ ultimately found that "[t]he evidence of record does not fully support [Plaintiff's] allegations" and concluded that Plaintiffs' allegations were "less than fully credible." Tr. 25, 28. Similarly, the ALJ found that the testimony of Plaintiff's brother, James Turner, was "not entirely credible." Tr. 28. Plaintiff, however, does not challenge these findings and thus the Court does not <u>sua</u> <u>sponte</u> address these issues here.

10

all over in her joints, muscles, and bones in her left shoulder, back, and neck" and that "[s]ide effects from medicine include nervousness, mouth/throat dryness, irritation, stomach/abdominal pain, cramping, diarrhea, constipation, nausea, dry eyes, dry mouth, blurred vision, bloating, loss of appetite, dizziness, headache, cough, drowsiness, fatigue, anxiety, trouble sleeping, sweating, heartburn, and swelling of ankle/feet." Id. (citation omitted). The ALJ noted Plaintiff's claims that she "can lift maybe 5 pounds and walk about half a mile before needing to rest" and "can only lift 5 pounds on a good day[,]" that she "cannot lift her arms and it is difficult for her to walk[,]" and that "[s]he can stand/walk for 15 minutes at a time." Id. (citation omitted). The ALJ observed that Plaintiff "had another stroke and cannot move the left side of her body" and has "had three transient ischemic attacks which have affected her left side including tremors and weakness." Id. (citation omitted).

The ALJ noted that "at the hearing, [Plaintiff] testified that she cannot do anything with her left arm" and "cannot raise her left arm above chest level and she has tremors." Id. The ALJ noted that Plaintiff "is very depressed and does not leave the house[,]" that Plaintiff "has trouble with her left knee and has fallen twice in the last couple of months[,]" and that Plaintiff "uses a cane to prevent [herself] from falling." Id. The ALJ observed that Plaintiff "takes medicine for colitis and irritable bowel syndrome" and "also has had left carpel runnel surgery, cyst removal, and palm reconstruction." Id. The ALJ noted Plaintiff's claims that she "has to lie down two to three times a day, totaling four hours" and that "[Plaintiff's] brother, James Turner, generally corroborates [Plaintiff's] daily activities and abilities." Id. (citation omitted).

### 3. Examination Findings Observed By The ALJ That Support Plaintiff's Claim

The ALJ then turned to Plaintiff's medical records and observed that "[i]n March 2013, [Plaintiff] complained of pain everywhere" and specifically "reported

midline cervicothoracic region pain which radiated to the shoulder/arms and also caused increased headaches." Tr. 25-26 (internal quotation marks omitted). The ALJ noted that Plaintiff "also complained of general lumbosacral pain which radiated down the bilateral posterior hips/thighs/legs and into the feet" and that Plaintiff stated that her "neck pain was most bothersome at the time." Tr. 26. The ALJ observed that Plaintiff "reported pain with basically all active motions and passive motions[,] although she did seem to be limited with external right side bending and right rotation the most." Id. The ALJ noted that there was "weakness noted throughout the upper extremities with the left side weaker than the right[,]" "[s]ensation was intact[,]" Plaintiff was "diagnosed with cervicalgia and lumbago[,]" and that Plaintiff "was discharged due to failed follow-up attendance." Id. (citation omitted).

The ALJ noted that the month after Plaintiff was discharged for failed follow-up attendance, Plaintiff reported to the doctor with "complain[ts] of continued pain" and "was on Lyrica, Prozac, and Tramadol[,]" but she "had not gone to physical/occupational therapy due to insurance issues." Id. The ALJ observed that Physical examination notes revealed that Plaintiff had "tenderness on palpation of the fingers, hands, elbows, and shoulders but no swelling" and that Plaintiff had "decreased range of motion of the left shoulder." Id. The ALJ noted that Plaintiff's "cervical spine and thoracic spine showed paraspinal tenderness[,]" her "lumbosacral spine exhibited tenderness on palpation[,]" that Plaintiff had "tenderness on palpation of the knees but no effusion[,] . . . tenderness on palpation of the feet with right foot swelling and decreased flexion/extension[,]" and "multiple trigger points were positive." Id. The ALJ observed that Plaintiff had "decreased sensation of the hands, left greater than right." Id.

The ALJ next observed records from a consultative examination Plaintiff attended in September 2013, and noted that Plaintiff presented with "pain due to fibromyalgia, migraine, vision problems, swelling in her ankles, and tremor in her

left hand." Id.  The ALJ noted that Plaintiff "reported that at the beginning, the pain all over her body was so severe that she became like paralyzed." Id.  The ALJ observed Plaintiff's statements to the doctor that "because of this condition[,] she had been very limited in functioning and operating her daily activities[,]" she was reportedly tired, and "due to the extreme pain . . . had problems sleeping." Id.  As also observed by the ALJ, according to Plaintiff, "[s]he woke up and was in constant pain . . . [and] stated that this condition had made her very depressed with crying spells and not able to feel up to doing things during the day." Id.  The ALJ observed Plaintiff's statements that "[s]he felt demoralized because she was not able to work" and as a result of being unable to work, she "had no income and this made her furthermore frustrated." Id.  The ALJ noted that Plaintiff was diagnosed with depressive disorder due to her medical condition.  Tr. 27.

Next, the ALJ observed that in November 2013, Plaintiff "complained of difficulty getting out of bed for four days due to knee pain" and "had fallen a couple times due to knee buckling." Id.  The ALJ noted that Plaintiff "was on Lyrica, Cymbalta, and Tramadol" at that time. Id. (citation omitted).

The ALJ noted that an "MRI of [Plaintiff's] left shoulder in July 2013 revealed a tiny (3mm) interstitial partial thickness tear to the anterior fibers of the supraspinatus tendon of [her] left shoulder" and that "[t]here were remote postoperative changes from a Mumford procedure." Id.  The ALJ also noted that Plaintiff was admitted to the hospital in February 2014, after presenting with "left-sided weakness and dizziness." Id.  The ALJ observed that Plaintiff reported some chest tightness, she "underwent physiotherapy and occupational therapy[,]" and was "diagnosed with transient ischemic attack, resolved." Id. (citation omitted).

The ALJ discussed records from May 2014, when Plaintiff presented to the doctor with complaints "of pain all over especially the left knee" and was noted to be on Lyrica and Tramadol at that time. Id. (citation omitted).

The ALJ noted that an MRI of Plaintiff's left knee from June 2014, "showed mild cartilage thinning of the medial compartment and small knee joint effusion." Id. (citation omitted).

According to the ALJ, in December 2014, Plaintiff presented to the doctor with difficulty functioning and was reportedly out of medication. Id. Plaintiff was diagnosed with "rheumatoid arthritis, fibromyalgia, depression, bilateral lower extremity swelling, and history of transient ischemic attack" and was given samples of Lyrica and recommended to see her rheumatologist. Id. (citation omitted).

The ALJ next observed that in May 2015, Plaintiff reported to the doctor with "complain[ts] of fatigue and feeling off since two days prior to Mother's Day." Id. The ALJ noted that Plaintiff "went to the emergency room on Mother's Day with these symptoms along with imbalance, dizziness, swollen gland to the right side of the neck, and low back pain to the right." Id. The ALJ also noted that Plaintiff had "costovertebral angle tenderness on the right" and was "diagnosed with unspecified hypothyroidism, allergic rhinitis with cause unspecified, rheumatoid arthritis, and unspecified myalgia and myositis." Tr. 27-28 (citation omitted).

Finally, the ALJ noted that in June 2015, Plaintiff presented to the doctor with "sharp lower back pain that would come and go" and "reported a history of diverticulitis and reported abdominal pain that would come and go and dark stools." Tr. 28. The ALJ observed that Plaintiff "had a history of depression and wanted to see a psychiatrist[,]" she "had right upper quadrant and left upper quadrant tenderness[,]" her "abdomen was soft[,]" and she had "tenderness to the lower back paraspinal muscles." Id. The ALJ noted that Plaintiff "was diagnosed with unspecified hypothyroidism, rheumatoid arthritis, unspecified myalgia and myositis, and lumbago" and "was continued on Levothyroxine and Cyclobenzaprine." Id. (citation omitted).

/ / /

14

### 4. Examination Findings Observed By The ALJ That Detract From Plaintiff's Claim

With regard to the evidence that detracts from Plaintiff's claims of debilitating mental impairments, the ALJ observed that Plaintiff "has never been hospitalized in a psychiatric hospital" and has "never received outpatient psychiatric treatment." Tr. 26 (citation omitted). The ALJ also observed that at a mental status examination in September 2013, Plaintiff had "good interpersonal contact with the interviewer[,]" was "generally cooperative" and "volunteered information spontaneously"; "[a] motor exam demonstrated no dysfunction. Gait and stance were normal. Reflexes were normal"; "[t]here w[as] no obvious psychomotor agitation or retardation"; Plaintiff was "coherent and organized"; there was "no tangentiality or loosening of associations" and "no bizarre or psychotic thought content"; Plaintiff "was relevant and not delusional" and displayed "no suicidal, homicidal, or paranoid ideation during the interview"; Plaintiff "denied recent auditory or visual hallucinations" and "did not appear to be responding to internal stimuli during the interview"; Plaintiff's "[m]ood was somewhat dysphoric, and [her] affect was appropriate and congruent with thought and content"; Plaintiff "was not tearful" and "[s]he denied any feelings of hopelessness, helplessness, or worthlessness"; Plaintiff's "[s]peech was normally and clearly articulated, without stammering, dysarthria, neologisms, tangentiality, circumstantiality, or loosened, unusual, or blocked associations"; Plaintiff "was alert and oriented to time, place, person, and purpose" and "appeared to be of at least average intelligence"; Plaintiff "was able to follow the conversation well"; and Plaintiff's "[i]nsight and judgment appeared to be intact regarding her current situation." Tr. 26-27 (citation omitted).

With regard to Plaintiff's physical impairments, the ALJ observed the following evidence that detracts from Plaintiff's claims. The ALJ observed that in March 2013, Plaintiff presented to the doctor with complaints of pain

everywhere[,]" but was later discharged from this doctor's care "due to failed follow-up attendance[,]" which the ALJ acknowledged was a result of Plaintiff not having insurance. Tr. 25-26.

The ALJ next observed that a month after being discharged from the care of her doctor for failed follow-up attendance, Plaintiff presented to the doctor again with complaints of continuous pain, but "[a] motor exam demonstrated no dysfunction[,]" and Plaintiff's gait, stance, and reflexes were "normal." Tr. 26 (citation omitted).

The ALJ noted that although an MRI of Plaintiff's left shoulder from July 2013 revealed a "tiny (3 mm)" partial tear of the fibers and tendon in Plaintiff's left shoulder, there was "no full thickness supraspinatus tear and [Plaintiff had] a normal supraspinatus muscle." Tr. 27. Moreover, the ALJ added that there was "no compression of the supraspinatus complex[,]" the "MR scan of [Plaintiff's] left shoulder was otherwise unremarkable[,]" and "X-rays of both [of Plaintiff's] knees were normal." Id. (citations omitted).

The ALJ noted that in February 2014, discussed above, after being admitted to the hospital with reports of left-sided weakness and dizziness, Plaintiff's "vitals were stable" and "[h]er labs were negative." Id. The ALJ reported that Plaintiff's "cardiac enzymes remained negative during her hospital stay" and "[h]er EKG showed no acute changes and was in normal sinus rhythm." Id. The ALJ added that a "CT scan of [Plaintiff's] brain did not show any acute infarct or bleed[,]" a "[b]ilateral carotid Doppler showed no significant stenosis[,]" Plaintiff's "[b]rain MRI did not show any acute stroke or infarct[,]" and "[Plaintiff's] vitamin levels were normal." Id. The ALJ added that Plaintiff's "speech and swallowing evaluation was unreasonable[,]" Plaintiff "was started on a regular diet[,]" which Plaintiff "tolerated well with no incident of aspiration or fall[,]" and "[h]er left-sided weakness resolved and was back to baseline." Id. The ALJ noted that Plaintiff "was discharged home in good general condition, symptom-free, with

16

stable vitals[,] . . . was continued on home medication[,] . . . [and] was diagnosed with transient ischemic attack, resolved." Id.

The ALJ then observed that in May 2014, after presenting to the doctor with "complaint[s] of pain all over especially the left knee[,]" Plaintiff was found to have "had improved swelling in the legs due to medication[,]" and an MRI of Plaintiff's left knee from June 2014, was "otherwise . . . unremarkable" besides the presence of "mild cartilage thinning of the medial compartment and small knee joint effusion." Id. (citation omitted).

The ALJ next discussed medical records from December 2014, where Plaintiff presented to the doctor with complaints of having "difficulty with functioning[,]" but that a physical examination revealed that Plaintiff "was in no distress." Id. The ALJ noted that Plaintiff reportedly had ran out of her medications one month prior, in November 2014, and had stopped "going to her rheumatologist for three months." Id. The ALJ noted that reports from that visit revealed that Plaintiff "had no problems with proximal muscle weakness or any muscle soreness[,]" that "[t]here were no new bone or joint problems[,]" and that there was also "no synovial fluid thickness." Id.

The ALJ noted next that in May 2015, after presenting to the emergency room on Mother's Day with complaints of imbalance, dizziness, a swollen neck gland, and low back pain, Plaintiff "denied hematuria or dysuria" and reported that she "had been off medications for one month." Id. The ALJ noted that a physical examination revealed that Plaintiff "was in no apparent distress[, t]here was no thyromegaly, JVD, lymphadenopathy, or carotid bruit[,]" and Plaintiff's "[c]ranial nerves I through XII were grossly intact." Id. (citation omitted). The ALJ added that "[t]here were no lateralized findings[,]" a "CT of the brain showed no abnormalities[,]" and a "[c]hest x-ray was normal." Tr. 27-28 (citation omitted).

Finally, the ALJ observed medical records from June 2015, where Plaintiff presented to doctors with "sharp lower back pain that would come and go[,]" but

17

that Plaintiff reportedly had "no pain at th[at] time and last felt [pain] the day before." Tr. 28. The ALJ noted that a physical examination revealed that Plaintiff was in "no apparent distress[,]" Plaintiff's "lower extremities revealed no cyanosis, clubbing, or edema[,]" Plaintiff's "[c]ranial nerves I through XII were grossly intact[,]" and "[t]here were no lateralized findings." Id. (citation omitted).

### 5. Standard To Review ALJ's Weighing Of Dr. Trinh's Opinions

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation and internal quotation marks omitted). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citation omitted).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

/ / /

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" <u>Trevizo</u>, 871 F.3d at 675 (quoting <u>Ryan</u>, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" <u>Garrison</u>, 759 F.3d at 1012 (quoting <u>Orn v. Astrue</u>, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" <u>Trevizo</u>, 871 F.3d at 675 (quoting <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

### 6. Substantial Evidence Supports The ALJ's Conclusion.

Here, the ALJ discounted Dr. Trinh's opinion, in part, because it was inconsistent with the record as a whole. Tr. 29. Included in the records discussed by the ALJ, were the contradicting opinions of five doctors who all opined that Plaintiff had fewer limitations than those endorsed by Dr. Trinh on May 23, 2014. Tr. 28-29. However, because the ALJ did not expressly use the phraseology that Dr. Trinh's opinion was contradicted by those five doctor's opinions, and because the Court cannot affirm the ALJ's decision on a ground the Agency did not invoke in making its decision, the Court analyzes whether the ALJ's reasons for rejecting Dr. Trinh's opinion conform to the more stringent clear and convincing standard discussed above. <u>See</u> <u>Stout</u>, 454 F.3d at 1054 (the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citation omitted)).

First, with regard to Plaintiff's physical limitations, as discussed above, the ALJ cited Drs. Mani and DeBorja's opinions that Plaintiff could lift and/or carry twenty and fifty pounds occasionally, and ten and twenty-five pounds frequently, as well as Dr. Trinh's opinion that Plaintiff could lift and/or carry less than ten

19

pounds occasionally and frequently. Tr. 29. Additionally, the ALJ discussed Drs. Mani and DeBorja's options that Plaintiff could sit, stand and/or walk for six hours each in an eight-hour workday, as well as Dr. Trinh opinion that Plaintiff could perform each of these activities for only two hours per day. Id. Finally, the ALJ observed that Dr. Mani opined that Plaintiff could frequently climb, balance, and crawl, and that Dr. DeBorja opined that Plaintiff could frequently climb, balance, and kneel occasionally stoop, crouch, and crawl, and frequently handle and finger bilaterally, and observed that Dr. Trinh opined that Plaintiff could never twist, stoop, crouch, climb stairs, or climb ladders. Id. The Court finds that The ALJ's discussion of Drs. Mani and DeBorja's contradicting opinions constitutes a clear and convincing reason, supported by substantial evidence, for finding that Dr. Trinh's opinion was inconsistent with the record.

Similarly, with regard to Plaintiff's mental limitations, the ALJ noted Dr. Trinh's opinion that Plaintiff has no ability to complete a normal workday or workweek without interruptions from psychologically based symptoms. Id. The ALJ also noted, however, that Dr. Muralles opined that Plaintiff was only mildly limited in her ability to maintain regular attendance, perform work activities on a consistent basis, or complete a normal workday or workweek without interruption as a result her psychiatric conditions. Tr. 28-29. Similarly, the ALJ observed that Drs. Hammonds and Kang opined that Plaintiff would be able to complete a normal work day and week. Tr. 29. The Court finds that these contradicting medical opinions, as observed by the ALJ, constitute a clear and convincing reason, supported by substantial evidence, for finding that Dr. Trinh's opinion was inconsistent with the record.

The Court next examines whether the ALJ's reason for assigning Dr. Trinh's opinion little weight—that it was not consistent with Plaintiff's generally unremarkable physical examinations and normal to mild imaging findings—was a

clear and convincing reason supported by substantial evidence in the record. The Court begins its analysis by examining Plaintiff's normal to mild imaging findings.

The Court acknowledges that fibromyalgia "is poorly-understood within much of the medical community[,]" "is diagnosed entirely on the basis of patients' reports of pain and other symptoms[,]" and that an ALJ "err[s] by effectively requiring objective evidence for a disease [fibromyalgia] that eludes such measurement." Benecke v. Barnhart, 379 F.3d 587, 589-90, 594 (9th Cir. 2004) (citation omitted). However, as discussed above, the ALJ found that Plaintiff's fibromyalgia was a severe impairment at step two. Tr. 23. Moreover, Dr. Trinh's opinion did not rest entirely on Plaintiff's fibromyalgia. Rather, as Plaintiff acknowledged in the Joint Stipulation, Dr. Trinh also cited Plaintiff's osteoarthritis in her hands, and Plaintiff's bursitis in her left knee as contributing factors to the functional limitations she endorsed. ECF No. 19, Joint Stipulation at 5-6. Plaintiff provides no explanation as to why the osteoarthritis in her hands and the bursitis in her left knee would evade detection in medical imaging. Further, included in the imaging that the ALJ found was normal to mild, were an "unremarkable" MRI of Plaintiff's left knee, and a "normal" x-ray of both of Plaintiff's knees. Tr. 27.

Accordingly, because Dr. Trinh's opinion did not rest entirely on Plaintiff's fibromyalgia, and instead also relied on Plaintiff's osteoarthritis in her hands and bursitis in her left knee, and because the ALJ specifically pointed to unremarkable and normal MRI and X-ray findings in Plaintiff's knees, the Court finds that the ALJ's reliance on Plaintiff's normal to mild imaging findings was a clear and convincing reason supported by substantial evidence for assigning Dr. Trinh's opinion little weight.

The Court is similarly not persuaded by Plaintiff's argument that the ALJ erred by relying on Plaintiff's unremarkable physical examination findings when assigning little weight to Dr. Trinh's opinion. As discussed at length above, the ALJ pointed to specific physical examination findings throughout Plaintiff's

21

longitudinal treatment records that both support his conclusion that Plaintiff's examination findings were unremarkable, as well as many physical examination findings that support Plaintiff's contention that she is disabled. However, the Court finds that the evidence relied upon by the ALJ reasonably supports the ALJ's conclusion.

Accordingly, although Plaintiff disagrees with the ALJ's interpretation of this evidence, the Court cannot substitute its judgment for that of the ALJ because the evidence that the ALJ relied on reasonably supports the ALJ's conclusion. Ghanim, 763 F.3d at 1163; see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." (citation omitted)). As such, the Court finds that the ALJ's conclusion—that Plaintiff's physical examination findings were generally unremarkable and were not consistent with Dr. Trinh's opinion—was a clear and convincing reason, supported by substantial evidence, for assigning Dr. Trinh's opinion reduced weight.

Finally, the Court is unpersuaded by Plaintiff's argument that the ALJ erred by assigning reduced weight to Dr. Trinh's opinion because it was conclusory and provided little explanation of the evidence relied on in forming that opinion. Here, Dr. Trinh provided no explanation of the medical evidence or any examination reports she relied on in developing her opinion and instead, listed only Plaintiff's fibromyalgia, osteoarthritis in her hands, and left knee bursitis in support of her conclusion. See Garrison, 795 F.3d at 1023 n.12 ("The better the explanation a source provides for an opinion, the more weight we will give that opinion." (citation and internal quotation marks omitted)). Moreover, this case is distinguishable from Garrison. In Garrison, the ALJ erred, in part, by "manufactur[ing] a conflict with respect to the outcome of [the plaintiff's] treatment"; by failing to acknowledge that the doctor's opinion that was given less weight was a specialist; and by failing to acknowledge that no other treating or

examining physician disagreed with the discredited doctor's opinion. Id. at 1013. In contrast, the ALJ in this case observed that Dr. Trihn was a specialist by noting that Trihn was Plaintiff's rheumatologist, and, as noted above, he discussed the contradicting opinions of five other doctors and provided a thorough discussion of the evidence that both supported and detracted from his ultimate conclusion that Plaintiff was not disabled. Accordingly, the Court finds the ALJ's determination that Dr. Trinh's opinion was due less weight because it was conclusory and provided little explanation of the evidence relied on in forming that opinion, was a clear and convincing reason supported by substantial evidence.

As such, the Court finds that the ALJ's conclusion that Dr. Trinh's opinion was due less weight, was supported by clear and convincing reasons and substantial evidence in the record.

## IV.    CONCLUSION

Because the Commissioner's decision is based on proper legal standards and is supported by substantial evidence, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED**.

IT IS SO ORDERED.


DATED: <u>7/3/2018</u>

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge